IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                CRIMINAL ACTION NO. 2:22-cr-00225

TROY WILSON WHEATLEY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Suppress Evidence Collected on August 30, 2021, and December 2, 2021* (Document 25) and the *Response of the United States of America to Defendant's Motion to Suppress* (Document 27), together with the attached exhibits.

**FACTS**[1]

The Defendant, Troy Wilson Wheatley, was charged with two counts of felon in possession of a firearm via an *Indictment* (Document 3) returned on December 20, 2022. Count One alleges that he possessed a Smith & Wesson .22 caliber pistol and a Ruger 9 mm pistol on or about August 30, 2021, at or near Chapmanville, Boone County, West Virginia. Count Two alleges that he possessed a Beretta .25 caliber pistol on or about December 2, 2021, at or near Big Creek, Logan County, West Virginia.

---

1 Because the facts relevant to the motion to suppress are undisputed and/or available from video evidence, and the motion can be resolved on legal grounds, the Court finds that a hearing is unnecessary.

On August 30, 2021, Deputy T. M. Abbott of the Boone County Sheriff's Department responded to a call reporting that the Defendant had shot at someone. "The alleged victim was in no immediate danger and secured from the premises when police approached the defendant's home." (Def.'s Mot. at 1.) Deputy Abbott reported that he could see the Defendant walking next to a small outbuilding adjacent to his home, and subsequently pulled into the Defendant's driveway. After he had exited the vehicle, he observed that the Defendant had a handgun in a holster on his hip. Deputy Abbott knew that the Defendant had been convicted of a felony offense. He approached, detained the Defendant, and discovered a second pistol in his back pocket.

On December 2, 2021, Trooper Joshua Honaker, then with the West Virginia State Police, conducted a traffic stop on a Ford Taurus with expired inspection and registration stickers.[2] The Defendant was in the front passenger seat, someone else was driving, and the vehicle owner was in the back seat. Trooper Honaker explained that he had pulled the vehicle over because "all the stickers are dead," and requested the driver's license, then asked the Defendant for his ID and name. (Honaker bodycam at 1:34, att'd as U.S. Ex. 2.) Trooper Honaker indicated that he recognized the Defendant. He asked the rear passenger for his name and ID and asked him to open the back passenger door so that they could speak more easily. He asked if there were weapons in the vehicle. The driver and passengers stated that there were not. He then requested permission of the driver and vehicle owner to "take a peek in there to double check." (*Id.* at 3:47.) The response from the vehicle owner cannot be clearly heard in the video footage. Trooper Honaker asked all the occupants of the vehicle to step out so that he could search, and they did so,

---

2 The details of the traffic stop are drawn from the officer's bodycam footage.

2

suggesting that they had consented to the search. Although the bodycam footage does not show what happened, Trooper Honaker indicated he saw or heard the Defendant toss an object outside the vehicle. Trooper Honaker handcuffed the Defendant and found a small metal container with suspected controlled substances. He asked if there was anything else in the vehicle, and the driver indicated that she had placed a gun under the passenger seat. Trooper Honaker confirmed with the Defendant that he was a convicted felon. He then completed the search of the vehicle and seized the loaded gun.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

### A. Count One

The Defendant argues that the August 30, 2021 arrest was unlawful because Deputy Abbott impermissibly intruded into the curtilage of his home without a warrant. He argues that "[i]t is uncontested that Deputy Abbott did not allegedly see any firearms on the defendant until after he turned off the main road and onto the defendant's driveway." (Mot. at 5.) The Defendant contends that his driveway constitutes curtilage because it is an improved area adjacent to his home

that he is responsible for maintaining, and some trees were planted to reduce visibility from the adjacent state road. The United States argues that the driveway is visible from the road, unprotected by a gate or fence, and offers the obvious route for any visitor or delivery person to approach the front door of the home.

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 1414 (2013). Curtilage, or "the area immediately surrounding and associated with the home" is treated as "part of the home itself for Fourth Amendment purposes." *Id.* (quoting from *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

The Court need not reach the question of whether the Defendant's open driveway constitutes curtilage. The Supreme Court in *Jardines* explained that even on a front porch, an area clearly within the home's curtilage, there is an "implicit license" that "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. Police officers, like any other visitors, are thus free to "approach a home and knock," even without a warrant. *Id.* (holding that "introducing a trained police dog to explore the area around the home" falls outside that implicit license). Deputy Abbott could see the Defendant from the state road. He pulled into the driveway and exited his vehicle, just as any visitor would do. Without any intrusive searching, he observed the gun in a holster on the Defendant's hip as the Defendant stood in an open area outside the home. He knew that the Defendant was a convicted felon and was therefore committing a crime by possessing a firearm. Thus, the United States has met its burden of

establishing that the evidence in question was lawfully obtained. The motion to suppress with respect to Count One should be denied.

### B. Count Two

The Defendant argues that he was unlawfully seized because West Virginia granted a grace period for renewing inspection stickers related to the COVID-19 pandemic, and expired stickers therefore could not provide probable cause to stop a vehicle. He further contends that removing him from the vehicle constituted an unlawful seizure. In addition, the Defendant argues that Trooper Honaker illegally searched the vehicle prior to obtaining consent.

The United States counters that the grace period for renewing expired inspection stickers "appears to have ended on July 1, 2020," citing the West Virginia Department of Motor Vehicles website. (Resp. at 6.) Further, the grace period applied only to inspection stickers, and Trooper Honaker observed an expired registration sticker as well. It further argues that the Defendant lacks standing to contest the search and recovery of the firearm from the vehicle because he was not the driver or owner of the vehicle. In addition, it contends that precedent clearly permits the removal of the driver and passengers during a traffic stop. It also argues that Trooper Honaker's bodycam shows that he requested consent to search, asked the vehicle's occupants to exit, then recovered suspected controlled substances that the Defendant tossed away from the vehicle, and then began his search. Therefore, the United States contends that the search was supported by both consent and probable cause based on the drugs the Defendant threw as he exited the vehicle.

Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police

have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008). "A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object." *United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002).

Executive Order 23-21 terminated Executive Order 7-20, which suspended deadlines for annual vehicle inspections, effective October 1, 2021. W. Va. Executive Order 23-21, available at https://governor.wv.gov/Documents/2021%20Executive%20Orders/EO-23-21-July-20-2021.pdf (last visited January 26, 2023). Therefore, even if stops based on expired inspection stickers were impermissible during the suspension period, Trooper Honaker was free to rely on expired inspection stickers in conducting traffic stops on December 2, 2021. In addition, as the United States points out, the stop was further justified by the expired registration.

The Defendant lacks standing to challenge the search of the vehicle, because he was not the driver or owner of the vehicle, and he does not claim a possessory interest in the gun. Even if he had standing to challenge the search, it was justified by both apparent consent and probable cause. In the bodycam footage, Trooper Honaker can clearly be heard confirming that the rear passenger owned the car and requesting consent to "take a peek in there just to double check,"

claiming that "they're making us do it at the end of the year, just double check everything." (Honaker bodycam footage at 3:47 – 3:52.) Although the response is not audible, Trooper Honaker then asks everyone to hop out, and they comply, suggesting that consent was granted.[3] As everyone exits the vehicle, Trooper Honaker circled the back of the car toward the passenger side, and immediately confronted the Defendant, asking what he had thrown. The Defendant denied throwing anything, and Trooper Honaker quickly found a small metal container with suspected controlled substances. He asked whether he would find anything else, and the vehicle driver admitted that she had a gun in the car, which she had placed under the passenger seat. Trooper Honaker recognized the Defendant as a felon. Thus, he had probable cause to conduct a search.

Because the Defendant lacks standing, those with standing appeared to consent to the search, and there was probable cause at the time Trooper Honaker began the search, the motion to suppress evidence from the traffic stop must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Suppress Evidence Collected on August 30, 2021, and December 2, 2021* (Document 25) be **DENIED**.

---

3 "[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Therefore, the Defendant's argument that Trooper Honaker violated his rights by requiring him to exit the vehicle lacks merit.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: January 30, 2023

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA